GLOBE MALLEABLE IRON AND STEEL COMPANY et al., Appellants, *v.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

**Railroads — street crossings — negligence — action against railroad to recover damages arising from fire so far as they were enhanced by blocking of a street crossing by freight train.**

1. As to travelers upon streets a railway necessarily has the right of way. But an emergency may arise which requires the temporary reversal of this rule. Knowing of such a condition the railway should yield what otherwise would be its rights. It should so manage its trains as not to increase the public hazard. A fair use of its tracks in view of its own interests and those of the public is what it is entitled to. Nothing more.

2. This action is brought to recover damages sustained by plaintiffs as the result of a fire so far as such damages were enhanced by the blocking of the streets of the city of Syracuse by defendant's trains so as to prevent a part of the fire department from reaching the scene of the fire. By reason of the delay, which it is claimed could have been readily avoided by defendant's servants, much greater damage was

done by the fire than would have occurred had the fire department been able to reach the fire promptly. The plaintiffs recovered at Trial Term. The judgment entered thereon was reversed by the Appellate Division. On examination of the evidence, *held,* that the question whether the defendant made reasonable use of its rights in the street in view of the situation, presented a question for the jury.

*Globe Malleable Iron & Steel Co.* v. *N. Y. C. & H. R. R. R. Co.,* 175 App. Div. 97, reversed.

(Argued June 5, 1919; decided July 15, 1919.)

APPEAL from a judgment entered April 16, 1917, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiffs and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward Schoeneck* and *Ernest W. Lawton* for appellants. The exclusive control of private property is subordinate to the exigencies of public safety and private necessity. The railroad company owed to the public in general a duty to so use its own property as not to do unnecessary injury to the property of another. (*Phœnix Ins. Co.* v. *N. Y. C. R. R. Co.,* 122 App. Div. 113; 196 N. Y. 554; *American Sheet & Tin Co.* v. *Pittsburgh & L. E. R. Co.,* 143 Fed. Rep. 793; *Cleveland, etc., Ry. Co.* v. *Taner,* 96 N. E. Rep. 758; *Houren* v. *Chi., M. & St. P. R. Co.,* 236 Ill. 620; *Birmingham, etc., R. Co.* v. *Williams,* 66 So. Rep. 653; *Erickson* v. *Gt. Northern Ry. Co.,* 117 Minn. 308; *Bodkin* v. *Gt. Northern Ry. Co.,* 124 Minn. 219; *Clark* v. *Gr. Trunk R. Co.,* 149 Mich. 400; *Metalic, etc., Co.* v. *Fitchburg R. Co.,* 109 Mass. 277; *Little Rock Tr. Co.* v. *McCaskill,* 75 Ark. 183.) The judgment of the guilty party cannot be substituted for the rule of the reasonably prudent man by which all acts in negligence law are measured. (*Mertz* v. *Connecticut Co.,* 217 N. Y. 475; *McGuire* v. *Barrett,* 223 N. Y. 449; *Hoyt* v. *N. Y., L. E. & W. R. R. Co.,* 118 N. Y. 406.)

*Leroy B. Williams* for respondent. Defendant is not liable for its failure to stop a moving freight train, and cut a crossing for firemen. (*A. S. & T. P. Co.* v. *P. & L. E. R. R. Co.*, 143 Fed. Rep. 789; *L. & N. R. R. Co.* v. *Scruggs*, 161 Ala. 97; *Vanderweile* v. *Taylor*, 65 N. Y. 341; *Bosch* v. *B. & M. R. R. Co.*, 44 Iowa, 402.)

Andrews, J.   Steam railways with tracks on or across streets in the city of Syracuse owe some duty to the public. The street is still a street and is still devoted to street uses. Its legitimate function may not be unreasonably impaired. As to travelers upon it the railway necessarily . has the right of way. But an emergency may arise which requires the temporary reversal of this rule. Knowing of such a condition the railway should yield what otherwise would be its rights. It should so manage its trains as not to increase the public hazard. A fair use of its tracks in view of its own interests and those of the public is what it is entitled to. Nothing more.

The tracks of the West Shore railroad enter Syracuse from the east. Parallel with them some fourteen hundred feet to the south is the Erie canal and some four hundred feet to the north, also parallel, is Burnet avenue, a paved street. From the canal to the north runs Greenway avenue. On its west side immediately south of the defendant's road is the plant of the Globe Malleable Iron and Steel Company. Seven hundred feet to the west Teall avenue also runs north from the canal and sixteen hundred feet further is Beach street crossing the canal by a bridge. South of the tracks a lane over the fields connects Beach street and Teall avenue. From an engine on the railroad the view of this lane is practically unobstructed. There is no other communication between the three north and south streets south of Burnet avenue. A traveler going towards the north, therefore, on either Beach street or Teall avenue can reach Greenway avenue only by way of Burnet avenue.

At 4:50 A. M., on the morning of June 23, 1912, a fire broke out in the Malleable Iron Company's plant. · At this time a freight train consisting of fifty-four cars and 2,160 feet in length was approaching on the West Shore tracks from the west. The engineer of this train, one Johnson, is now dead. But its fireman testified that he discovered the fire as he crossed James street some two miles away. When a mile distant he could locate it. Johnson had a regular train. On at least five or six trips he had been over the road in this neighborhood with the same fireman. We may assume that he knew the general situation and the communicating streets, for the general view towards the canal for much of the way ·was not obstructed by buildings or other obstacles. As the engine approached Beach street· the tracks were straight and the engineer could see standing on the tracks ahead of him 150 feet east of Greenway avenue another freight train.

Meanwhile the fire department of the city of Syracuse was attempting to reach and extinguish the fire. One hose cart crossed the canal and came northerly on Beach street with its gong clanging. It was a still morning. There was not much noise on the engine. The gong could be heard for a distance of three or four blocks. The train was going slowly at from two to six miles an hour. It could have been stopped within thirty or forty feet. It did not stop, however, and· the engine reached the crossing as the hose cart approached it. The firemen seeing that there would be delay; knowing that they could reach the fire only by means of Burnet avenue, turned to the right over the fields and so came to Teall avenue. Their course could be observed from the engine. Their object could have been divined. But when Teall avenue was reached the engine had just passed that crossing also and the hose cart was again blocked.

A second hose cart came south on Teall avenue to Burnet avenue. Its gong was also clanging as it turned

easterly towards Greenway avenue. Between the two avenues it must have been slightly ahead of the engine, for as it turned south on Greenway avenue and came to the crossing the engine was just passing.

While between Teall avenue and Greenway avenue the engineer had been signaled from the freight train standing on the tracks ahead to stop. He shut off steam but almost immediately the first freight train began to move and he was signaled to follow. As the engine passed Greenway avenue the captain of the hose cart called to someone on the engine asking why they did not stop and let the hose cart by. That person's lips were seen to move apparently in reply but what he said was not heard. Again when the train was partly over the crossing someone upon it signaled to the engineer to stop, evidently with the idea of cutting the train and so allowing the hose cart to pass through. This operation would have taken two minutes. The engineer did not see or did not heed this signal, although there was not much smoke over the train to hide his view. Although he knew of the location of the fire and must have appreciated the need of haste he continued on slowly without stopping until the crossing was clear. No train was following him. A delay of fifteen minutes ensued. As a result much greater damage was done by the fire than would have occurred had the hose carts been able to reach the scene promptly. It is for this damage that the action is brought.

With evidence in the case which would justify a jury in finding such facts as have been here outlined the Appellate Division has held that the complaint should be dismissed. In this we think it erred. Whether the defendant made reasonable use of its rights in view of the situation which confronted it may well be a matter upon which men might differ. It knew the fire was serious; it knew of its location; at least, as its train neared Greenway avenue a conversation between the fireman

and engineer shows it knew the fire department had not yet reached the scene; it knew that the department would attempt to do so and that haste was essential; it knew that this could only be accomplished through the crossing at Greenway avenue and that this crossing could be reached only from Burnet avenue. It had its train under control; it could have stopped in forty feet or a crossing could be cleared by cutting the train within two minutes. The jury might well say that its servants should have seen the hose cart coming north on Beach street; should have seen it as it turned easterly over the fields towards Teall avenue; should have realized what this attempt meant and should have left the Teall avenue crossing clear. They might say that these servants should have heard the second hose cart running easterly on Burnet avenue and realized that its only means of reaching the fire was by the Greenway avenue crossing and stopped before that crossing was reached. Or, if not, that having blocked that crossing they should have cut the train thereby diminishing the delay from fifteen minutes to two. We think that clearly here was a question of fact upon which the jury was entitled to pass.

The reversal by the Appellate Division is upon a question of law. We have examined the various exceptions to the admission or exclusion of testimony and to the charge and we find none that are material even if well founded. We do not discuss them in detail as to do so would unnecessarily lengthen this opinion.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

COLLIN, CUDDEBACK, CARDOZO and POUND, JJ., concur; HISCOCK, Ch. J., concurs for reversal but votes for a new trial on the ground that errors were committed in rulings on the evidence; McLAUGHLIN, J., dissents.

Judgment accordingly.